JAMES A. FLACK et al., Executors, etc., Appellants, v. THE STATE OF NEW YORK, Respondent.

Under the Revised Statutes (2 R. S. 645, § 38) the death of a judgment debtor while in custody under a body execution does not entitle the sheriff to poundage.

*It seems* that, to entitle him thereto, he must show either a collection of the moneys called for, interference by the judgment creditor with his execution of the process, or the discharge of the judgment debtor under the provisions of the act for the relief of imprisoned debtors; the arrest of the debtor is in no just sense the equivalent of a collection.

The history of the legislation upon the subject given and the authorities collated and discussed.

*Adams* v. *Hopkins* (5 Johns. 252), *Scott* v. *Shaw* (13 id. 378), *Ryle* v. *Falk* (24 Hun, 255; affirmed, 86 N. Y. 641), *Bolton* v. *Lawrence* (9 Wend. 436), distinguished.

(Argued March 12, 1884; decided April 15, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made January 11, 1883, which affirmed a decision of the State board of audit, disallowing a claim presented by the executors of the will of William C. Conner, late sheriff of the county of New York, for poundage upon an execution. (Reported below, 29 Hun, 286.)

The material facts are stated in the opinion.

*A. J. Vanderpoel* for appellants. The sheriff was entitled to poundage on the execution issued against the person of the judgment debtor, although no part of the judgment was collected and he died while in custody. (29 Eliz., chap. 4 ; 3 Geo. I, chap. 15, § 17 ; Constitution, 1777, art. 35 ; Laws 1789, chap. 25 ; *Adams* v. *Hopkins*,, 5 Johns. 252–254; Impey's Sheriff, 126, 151 ; *Scott* v. *Shaw*, 13 Johns. 378 ; 1 N. R. L. 502 ; 2 R. S. 645, op. id. 437 ; *Bolton* v. *Lawrence*, 9 Wend. 436 ; *Chapman* v. *Hatt*, 11 id. 41 ; *Campbell* v. *Cothran*, 56 N. Y. 279-281; *Koenig* v. *Stickel*, 58 id. 475 ; Code of Civ. Pro., § 3307, subd. 7; *Ryle* v. *Falk*, 86 N. Y. 641 ; 24 Hun, 255–257 ; *U. S.* v. *Haas*, 5 Fed. Rep. 29 ; U. S. R. S., § 829 ; 2 Laws of Mass. 1780–1807, p. 707 ; *Boswell* v. *Dingley*, 4 Mass. 410, 413 ; *Burhan* v. *Bank*, 5 N. H. 448 ; *Pope* v. *Hayman*, Skin. 363 ; *Bowe* v. *Campbell*, 63 How. Pr. 167 ; *Brown* v. *Genung*, 1 Wend. 117 ; *Hutchinson* v. *Brand*, 6 How. Pr. 73 ; *McCreery* v. *Willett*, 23 id. 129.) The force and effect of the *ca. sa.*, and of the execution against the person are precisely the same now as formerly. (Code of Civ. Pro., § 291 ; 3 R. S. [Banks' 6th ed.] 719 ; 1 R. L. [1813] 429, § 6 ; id. 504, § 12 ; *Cooper* v. *Bigelow*, 1 Cow. 56 ; *Chapman* v. *Hatt*, 11 Wend. 41 ; Code of Civ. Pro., §§ 1491, 1493 ; 2 R. S. 368, § 28 ; 3 id. [5th ed.] 649, § 42.) The court must presume that the sheriff as a public officer did his duty. (1 Greenl. Ev., § 40 ; *Hartwell* v. *Root*, 19 Johns. 345 ; *B'k U. S.* v. *Dandridge*, 12 Wheat. 69, 70 ; 1 R. S. 380, § 75.) The question before the court is one of law purely, and involves no exercise of discretion. (*Crofut* v. *Brandt*, 58 N. Y.

106, 112; *Baker* v. *Davenport*, 8 D. & R. 606; *Slater* v. *Haines*, 7 M. & W. 413.)

*D. O'Brien*, attorney-general, and *W. A. Poste*, for respondent. The *ca. sa.* against Tweed was never properly executed. (Code of Pro., § 183; Rule 6, Supr. Ct.; *In re Livingston*, 34 N. Y. 582; *Dent* v. *Watkins*, 49 How. Pr. 275; *Wood* v. *Dwight*, 7 Johns. Ch. 295; *People, ex rel. Roberts*, v. *Bowe*, 81 N. Y. 43.) Tweed having been received and imprisoned under criminal process, it was not within the power of the sheriff to execute a *ca. sa.* against him so long as he remained imprisoned in the criminal proceedings. (*Williams* v. *Bacon*, 10 Wend. 636.) A sheriff is not entitled to poundage upon an execution against the person if nothing is collected thereon, except in cases where the defendant in the execution is released at the direction or by the consent of the judgment creditor. (2 Bac. Abr., "Fees," 463; *Campbell* v. *Cothran*, 56 N. Y. 279; *Harrington* v. *Trustees, etc.*, 10 Wend. 547; *Woodgate* v. *Knatchbull*, 2 Term Rep. 158; 2 Bac. Abr., "Fees," 463; *Peck* v. *City Nat. B'k*, 29 Alb. L. J. 76; *Bowe* v. *Campbell*, 63 How. 167; *Kœnig* v. *Steckel*, 58 N. Y. 475–6.) The death of Tweed released both the sheriff and the people from all liability to each other under, and growing out of, the execution and the arrest. (Crocker on Sheriffs, §§ 36, 212, 612; *Phelps* v. *Williamson*, 5 Sandf. 578; *Price* v. *Hartshorn*, 44 N. Y. 94, 101; *Campbell* v. *Cothran*, 56 id. 279, 284.)

RUGER, Ch. J. The plaintiff's testator while sheriff of the county of New York received for collection an execution upon a judgment in an action wherein the people of the State were plaintiffs and William M. Tweed was defendant.

The plaintiff, having recovered its judgment for upward of six and a half millions of dollars, issued an execution thereon against the property of the defendant, which having been returned *nulla bona*, thereupon issued the execution against the person of the defendant.

On December 20, 1876, the sheriff arrested the defendant

upon the execution, and retained him in custody until December 31, 1876, when his term of office having expired he, in pursuance of the statute, transferred the process, with the body of the defendant, over to his successor.

No moneys were collected by either sheriff upon the process, and the defendant therein was retained in custody until his death, which occurred April 12, 1878.

The plaintiffs claim that they are entitled to poundage accruing to their testator upon this execution under the statute regulating the compensation of sheriffs.

A brief reference to some of the salient features in the history of legislation on the subject will enable us to appreciate the bearing of the cases cited on the question presented by this appeal.

Prior to the enactment of the statute of 29 Elizabeth, chapter 4, the charges of sheriffs for executing writs for the collection of judgments were entirely unregulated by statute. Under this condition of the law grave abuses had sprung up, and sheriffs and their servants were accustomed to practice extortion, not only upon the persons against whom process issued, but also upon the plaintiffs therein. By that act, which was entitled "An act to prevent extortion in sheriffs in cases of execution," it was provided " that for serving and executing any writ or execution upon body, lands, goods or chattels," the sheriff should not take more than twelve pence in the pound for the first £100, and six pence in the pound for all above £100. By this act the sheriff was not authorized to levy his fees by virtue of the execution, but they were payable in all cases by the plaintiff in the process. With some immaterial changes this continued to be the law in England until, by chapter 46 of the 43 George III, they were authorized to include in their levy under a *fi. fa.* upon the goods of the defendant the amount of their charges, for poundage and expenses, over and above the amount of the judgment. Under this statute the sheriff still had no right to exact poundage from the defendant upon a writ of *ca. sa.*, but his charges for services were payable by the plaintiff therein. (*Hayley* v.

*Racket*, 5 M. & W. 620.) It was not until the 15 and 16 Victoria, chapter 76, that sheriffs were authorized to collect, by virtue of the writ, poundage fees and expenses upon a *ca. sa.* from the defendant. Under these statutes it has been uniformly held in England, as will be seen by the cases hereafter cited, that sheriffs did not become entitled to poundage upon executions until they had collected the money called for by such writs.

The statute of 29 Elizabeth was the law of this State until, by the passage of chapter 25 of the Laws of 1789, it was provided that a sheriff should be entitled to charge fees for "serving an execution for or under £100 six pence per pound, and for every pound more than £100 three pence, the poundage on writs of *fieri facias*, and all other writs for levying money, to be taken only for the sum levied." With immaterial changes this statute continued the law of this State until the adoption of the provisions of the Revised Statutes.

In a recent case in this court it was said that "the right of a sheriff to fees is derived from, and depends altogether upon, the statute. At common law he could not lawfully collect or receive them." (*Campbell* v. *Cothran*, 56 N. Y. 281; *Dew* v. *Parsons*, 2 B. & Ald. 562; 1 Chit. 295; *Graham* v. *Grill*, 2 M. & S. 294.)

The plaintiffs must, therefore, establish their right to the fees in question under the statute in force at the time the services were rendered, and if they do not bring themselves within its terms they must necessarily fail in their claim. The material part of that statute reads as follows: "For serving" "an execution for the collection of money," "for collecting the sum of $250 or less, two cents and five mills per dollar; and for every dollar collected more than $250, one cent and two and a half mills." "The fees herein allowed for the service of an execution, and for advertising thereon, shall be collected by virtue of such execution in the same manner as the sum therein directed to be levied." (2 R. S. 645 [orig. ed.], § 38.) The language of this provision seems to be plain and unambiguous, and clearly removed from the possibility of misconstruction. The services for which compensation is pro-

vided are those for " collecting " the moneys called for by the execution, and the fees are computable only upon the amount " collected," and are made collectible by virtue of the execution alone.

To bring the claim of a sheriff within the provisions of the statute, it is essential that he show either the collection of the moneys called for, or some interference by the plaintiff with his execution of the process that is equivalent thereto. It has been uniformly held in England as well as in this country, under all statutes giving fees to sheriffs upon executions, that a judgment creditor cannot, after placing process in the hands of the officer and inducing him to move forward in the work of executing it, interfere to prevent its enforcement without thereby making himself liable for the compensation of the sheriff. (*Alchin* v. *Wells*, 5 Term R. 470 ; *Hildreth* v. *Ellice*, 1 Caines, 192 ; *Campbell* v. *Cothran*, 56 N. Y. 282.) These cases proceed upon an obvious equity, analogous to that underlying the familiar principle which debars a party to a contract from claiming the benefit of the non-performance of a condition precedent by the other party, where he has, by his own conduct, made performance thereof by such party impossible.

The question presented by this appeal seems to us to be one purely of statutory construction, and, in the absence of prior adjudication, would appear to be easy of solution. But it is contended by the learned counsel for the appellants that the logic of the cited cases supports the claim now made by them and entitles them to a reversal of the judgment appealed from.

Although in the early case of *Pope* v. *Hayman* (Skinner, 363), arising under the act of 29 Eliz., the subject is mentioned argumentatively by counsel, yet, aside from that case, we have been referred to none arising under any statute which seems to support the doctrine that a sheriff becomes entitled to poundage on an execution upon the death of a defendant held in custody thereunder, or that he is entitled to such poundage in any other event than the collection of the debt, the release of the debtor with the consent or by direction of the plaintiff, or his

discharge under the provisions of the act for the relief of imprisoned debtors.

We are, therefore, unembarrassed by any prior decisions covering the particular question presented by this appeal, and we may well consider their absence a fact militating against the plaintiff's claim, since the question is one which must frequently have occurred in the history of the law relating to imprisoned debtors. A number of cases have, however, been referred to by the appellants which are claimed to support their demand. We believe the cases cited have but a remote, if any, bearing upon the question here presented, and their soundness may be conceded without impairing the considerations which induce the determination of this case. Without considering all of them in detail it may be observed that they generally arose under statutes essentially different from that under consideration, and were mainly decided upon the language of the particular statute under which they respectively arose. In *Adams* v. *Hopkins* (5 Johns. 252) two propositions were announced, viz.: *first,* that the plaintiffs' attorney was liable to the sheriff, for the fees earned by him, in serving an execution against the defendant's person, and, *second,* that the sheriff was entitled to the statutory fees, when, after execution of process, the defendant had been discharged from imprisonment under proceedings for the relief of imprisoned debtors.

The right of the sheriff to fees in this case was based upon the express language of the statute then in force. (2 R. L. 77.) Mr. Justice THOMPSON, delivering the opinion, saying: " The sheriff by the statute of Elizabeth, and by our act, is to have his fees for serving an execution." It may be doubted whether the second proposition decided would be considered applicable to a case arising under the Revised Statutes. In *Scott* v. *Shaw* (13 Johns. 378) the only question considered was whether the sheriff was under the then statute entitled to fees upon a *ca. sa.* duly executed by him, although it was afterward set aside upon motion for irregularity, because a *fi. fa.* had not previously been issued and returned *nulla bona* as required by the statute. It was held that by the service of the

process, the sheriff became entitled to his fees. The statute in this, as in the previous case, gave the fees for the service of the execution, and that service was held to have been performed, so far as to fix the plaintiff's liability for sheriff's fees, when the body of the defendant was taken upon execution.

None of the English cases seem to support the doctrine of this case, and it can be sustained only upon the ground that the language of the statute established the sheriff's right to fees when he had commenced the execution of the process. In each of the early English cases of *Earle* v. *Plummer* (1 Salk. 332), *Rawstorne* v. *Wilkinson* (4 M. & S. 256), *Bullen* v. *Ansley* (6 Esp. 111) the sheriff had fully executed the writ and paid over the money collected. It was held in those cases that he thereby became entitled to poundage, although the writs were subsequently set aside for irregularity.

These cases afterward came under review in the case of *Miles* v. *Harris* (104 Eng. C. L. Rep. 550), in the Court of Common Pleas, upon the question reserved for the opinion of the court, whether the sheriff was entitled to poundage upon an execution when he had seized goods thereon sufficient to satisfy it, but such execution was afterward set aside for irregularity. It was held that he was not entitled to poundage, ERLE, Ch. J., saying: "Inasmuch, therefore, as no money was made by him under the execution, I think he was not entitled to claim poundage." This opinion was concurred in by the whole court, consisting of the justices WILLIAMS, WILLES and BYLES.

To similar effect was the decision of the Exchequer Court in the case of *Evans* v. *Manero* (7 M. & W. 463), and *Rex* v. *Robinson* (2 C. M. & R. 334). In *Ryle* v. *Falk*, reported in 24 Hun, 255, and affirmed in 86 N. Y. 641, by this court upon the opinion in the court below, it was held that the sheriff was entitled to his poundage upon a *ca. sa.* where the plaintiff had consented to the discharge of the defendant, upon the condition of his paying the sheriff's legal fees, charges and expenses. The principal question involved in that case was whether the plaintiff could interfere by directing a discharge after the de-

fendant was taken in execution, and thus preclude the sheriff from collecting the statutory fees, or in other words, whether any thing but the actual collection of the money called for by the process would entitle the sheriff to his poundage. This case was undoubtedly correctly decided upon the ground that the direction of the plaintiff was equivalent to the collection of the judgment, and the case was thereby brought within the meaning and spirit of the existing statute. The plaintiff had the right to control the execution of the process, and to impose such conditions upon the discharge of the defendant as he chose, and the defendant could not have the benefit of the stipulation without complying with the conditions upon which it was given. In *Campbell* v. *Cothran* (56 N. Y. 279), a *fi. fa.* had been issued to the sheriff upon a judgment for $4,328, and he had levied upon sufficient property to satisfy it. Upon appeal the judgment had been reduced to the sum of $60.20, and it was held that the sheriff was entitled to poundage upon the amount of the modified judgment only. This case was decided by the court upon the ground that under the statute the sheriff was entitled to poundage upon the sum collected only. In *Kœnig* v. *Steckel* (58 N. Y. 475), it was held that a judgment creditor could not maintain an action against the sureties upon a bond given for the payment of the judgment so long as he detained the debtor by imprisonment upon a *ca. sa.* issued on such judgment. It was said in effect that the imprisonment operated *pro tempore* as an extinguishment of the defendant's liability for the debt, and that the defense accruing to the principal from that fact would also inure to the benefit of his sureties.

We have not omitted to observe the language used by the courts in many of the cases referred to, to the effect "that the allowance of poundage is for the risk incurred," or "for the sheriff's trouble."

If these expressions were used in the sense that the sheriff became entitled to poundage whenever he had incurred risk in the service of process, they are manifestly incorrect, for there are many decided cases where such risks have been incurred,

and yet his right to poundage has been denied. Such for instance are the cases where the judgment has subsequently been modified or reversed, or where the execution has been set aside or reduced by the order of the court before collection. (Impey on Sheriffs, 159; *Campbell* v. *Cothran, supra; Miles* v. *Harris, supra; Evans* v. *Manero, supra.*)

This is so also when the property is taken by a trustee in bankruptcy after levy and before sale. (*Ex parte Browning*, L. R., 8 Ch. D. 596.) Neither does he become entitled to poundage on a *ft. fa.* when the property taken thereon is destroyed by fire or other casualty. (*Campbell* v. *Cothran, supra.*) The application of such expressions must be limited to the circum stances of the cases in which they were used, and deemed as intending to convey the idea that under the particular statute then being construed, the sheriff's right to fees became fixed by virtue of his levy, and the liability thereby incurred by him to the judgment creditor for damages arising out of a loss of property levied upon, or by the escape of the defendant from custody. Such expressions were undoubtedly used to convey an idea of the equitable considerations which induced the adoption of statutory provisions giving compensation to sheriffs, but they cannot operate to extend the class of cases in which fees are allowed beyond those authorized by the terms of the statute.

While we would not be considered as depreciating in any degree the risk incurred by a sheriff in executing the processes of the court, yet the hazard of liability for damages upon an escape must be much diminished by the presumed irresponsibility of a defendant against whose property an execution must previously be issued and returned *nulla bona* before his body can be taken in execution. The condition and circumstances of the debtor may be given in evidence in mitigation of damages in an action upon the case against the sheriff to recover damages for an involuntary escape. (*Patterson* v. *Westervelt*, 17 Wend. 543; *Smith* v. *Knapp*, 30 N. Y. 581; *Metcalf* v. *Stryker*, 31 id. 257; *Macrae* v. *Clarke*, 1 H. & R. 479.) It is otherwise, however, when the sheriff has made himself liable

as bail under the provisions of the Code.   (*Bensel* v. *Lynch*, 44 N. Y. 162.)

However equitable the sheriff's claim may be for compensation whenever he incurs risk by executing process, it is an answer to any claim founded thereon, to say, that this is not the ground upon which the statute has awarded it.   Although it is said in some cases that the taking of the body of a defendant in execution is in some sense a satisfaction of the judgment while the imprisonment continues, yet that consideration is not prominently urged here as a reason for reversing this judgment.   But even if it were, the argument would be ineffectual, for an arrest on a body execution is now generally considered not to operate as a satisfaction of the judgment, but simply as a suspension for the time being of other remedies of the creditor thereon.   (*Campbell* v. *Cothran*, *supra ; Kœnig* v. *Steckel*, 58 N. Y. 475; 2 R. S. 465, art. 2, title 5, chap. 6, part 3.)

It cannot in any just sense be said to be the equivalent of that collection of the moneys due upon a judgment which is required by the statute awarding fees to the sheriff for collecting an execution.

The change made in the law by the adoption of the provisions of the Revised Statutes, whereby the right of sheriffs to charge poundage upon executions was made to depend upon their collection, instead of upon their service, was, in our judgment, intended to change the conditions upon which the sheriff's right to collect fees was to be predicated.

It would be difficult to find language more significant, or which would seem to preclude more clearly any claim on the part of these officers to poundage, except upon the completed performance by them of the duties required in the enforcement of an execution.   The right to fees which before depended upon the rendition of whatever services he might perform in the collection of an execution is thereby made to turn upon the performance by the sheriff of the final act to be done in the course of such service.

The decision in the case of *Bolton* v. *Lawrence* (9 Wend.

436) does not conflict with this view. The question in that case was whether a sheriff was entitled to poundage upon a *fi. fa.* which had been levied by him upon sufficient property to satisfy it, but where he had been prevented from making the amount of the execution by the act of the plaintiff in causing the judgment to be collected in another county upon another execution. The decision in this case accords with the rule as uniformly laid down in the cases arising both before and since the passage of the Revised Statutes.

In *Campbell* v. *Cothran*, this court in giving a construction to the statute as applied to the writ of *fieri facias*, held that the sheriff was not entitled to poundage unless he collected the judgment, except in case the plaintiff interfered to prevent its collection: and we can see no reason why the principle laid down in that case is not equally applicable to cases arising upon the execution of a writ of *ca. sa.*

It is by virtue of the same statute, and through the use of the same language, that the claim of a sheriff to fees arises upon an execution, whether such execution goes against the property, or the person of the defendant.

It would seem necessarily to follow, that the conditions which have been adjudicated as essential to his right to demand fees in one class of cases would apply with equal force to another, when the right to fees in both depends upon the same language. This right is made by the language of the statute to depend exclusively upon the collection of the money called for by the process; and we think no right to the statutory fees can arise in favor of the sheriff, except upon the collection of the execution, or the intervention of the plaintiff by the performance of some act which in law is deemed to be the equivalent of collection. In *Campbell* v. *Cothran*, Judge ANDREWS said, after referring to a case holding that the sheriff is entitled to poundage, after the levy of an execution, where the parties had settled or compromised the debt, that " this case and those falling directly within the same principle are, we think, the only exceptions to the rule that the sheriff is not entitled to poundage on a money execution until the money is

collected, and that his commissions are to be reckoned on the sum realized on the execution, and not on the amount of the judgment." This decision accords with the settled law of England. (*Miles* v. *Harris, supra ; Evans* v. *Manero, supra ; Roe* v. *Hammond*, L. R., 2 C. P. D. 300 ; *Mortimore* v. *Cragg*, 3 id. 216.)

In *Roe* v. *Hammond* it was held upon the ground that there had been no collection, that the sheriff was not entitled to poundage upon a *fi. fa.* when he had levied upon goods sufficient to satisfy it, if the defendant after seizure paid out the execution before a sale. The decision in this case, however, was overruled in *Mortimore* v. *Cragg* in the Court of Appeals, decided in 1878, BRETT, L. J., saying: " When an execution issues the transaction may be divided into four parts. 1. The delivery of the writ to the sheriff. 2. Seizure. 3. The possible payment of money after seizure. 4. If no payment, sale. The first step does not entitle the sheriff to poundage, and if he does not seize, *Nash* v. *Dickenson* is an authority that he is not entitled to poundage. Although he seizes, nothing may be realized, because the seizure may be wrongful; it may be withdrawn by direction of law, then the sheriff would receive no poundage. Then comes the case of seizure. The money may be paid by the execution debtor, either directly or indirectly; directly by virtue of the seizure to the sheriff; indirectly when payment is made by means of a compromise which is the consequence of the seizure. In either of those cases the sheriff is entitled to poundage." BRAMWELL, L. J., saying: " I think the words in the statute of Elizabeth ' shall so levy ' mean shall seize and thereby get the money."

The view that we have adopted of the statute was also taken by Mr. Justice VAN BRUNT in the case of *Bowe* v. *Campbell* (63 How. 167). The unreported case of *Campbell* v. *Moers*, cited upon appellant's brief, would seem from the statement there given to conflict somewhat with our construction of the statute. We have no information respecting the case except that derived from the brief of counsel, and while we entertain

great respect for the opinion.of the learned judge who wrote in the case, we cannot concur in the conclusions which he seems to have reached.

The judgment should be affirmed.

All concur.

Judgment affirmed.