Matthew M. Levy, J.
The plaintiff bank, in this action against the defendant for alleged fraudulent indorsement of checks which were deposited with the plaintiff and upon which the plaintiff had extended credit to the defendant in the amount of $63,000, applied for and obtained a warrant of attachment in this court on September 19, 1960. The warrant was filed with the Sheriff of the City of New York on that day and directed the Sheriff to levy upon the defendant’s property in the possession of Harris, Upham & Co. The levy was duly made by the Sheriff on the same day upon Harris, Upham & Co. That party acknowledged on September 23, 1960 that it held to the credit of the defendant six certain negotiable United States Treasury Bills, *661 each in the sum of $5,000, making a total of $30,000 in value, maturing on September 22,1960, but that it had been subpoenaed by the United States Attorney on September 21,1960 to produce these securities before a Federal Grand Jury in the United States District Court for the Southern District of New York. It appears that the intention of the Government was not to require mere production before the Grand Jury in response to the subpoena duces tecum, so that the documents might be inspected, but its purpose was to have them turned over to the Federal Bureau of Investigation for extensive fingerprinting analysis in Washington, D. C.
Thereafter, and on September 22, 1960, an ex parte order was obtained by Harris, Upham & Co., from a United States District Judge, in a proceeding entitled “ In the Matter of a Grand Jury Subpoena for the Production of Six United States Treasury Bills Numbers 1640308 through 1640313 ”, directing the United States of America to show cause at the Criminal Motion Session of the United States District Court for the Southern District of New York, on September 26,1960, “ why an order should not be made quashing the [aforementioned] Grand Jury subpoena duces tecum ”. The Judge directed that service of a copy of the order to show cause and of the papers upon which it was granted be made upon the attorneys for the plaintiff and upon the Sheriff of the City of New York.
On the application before that court, the plaintiff and Harris, Upham & Co. maintained that they might become liable to the defendant and to the Sheriff were the subpoena complied with and delivery made to the Grand Jury, the United States Attorney or to the F. B. I. pursuant thereto, and that the rights of the Sheriff were paramount to the subpoena. The Sheriff did not appear in the United States court on the return date of the order to show cause and has not in any way submitted to the jurisdiction of that court.
That proceeding was resolved — without the knowledge or consent of the Sheriff — by a stipulation, dated September 27, 1960, made by Harris, Upham & Co., the moving party there, the United States, and the plaintiff, and, upon their consent, ordered by the United States District Judge, to the effect that Harris, Upham & Co. make delivery of the securities to the plaintiff, that the plaintiff in turn make delivery to the United States Attorney for such tests as may be necessary, and who will then make redelivery to the plaintiff within three weeks, plaintiff (upon return-of the treasury bills to it) to retain them for at least 60 days thereafter, without prejudice to the United States Government making an appropriate application by subpoena or *662 otherwise with respect to the retention and further production of the treasury bills. By the terms of the stipulation, the plaintiff indemnified Harris, Upham & Co. for any loss which might be occasioned to it by reason of the delivery of the securities to the plaintiff.
The parties thereto performed the stipulation in accordance with its terms, except that, actually, no call was made by the Government for the return to it of the bills and the plaintiff, after the lapse of the times therein specified, caused them to be redeemed, and has obtained and retained the proceeds thereof for its own use. When the Sheriff learned what had occurred, he applied in this court in this action for an order directing the plaintiff and the third party (Harris, Upham & Co.) to return and to deliver to the Sheriff the treasury bills, or $30,000, the value thereof, and fixing the Sheriff’s poundage at $1,100 and directing the plaintiff and the third party jointly and severally to make payment thereof, and further directing the docketing of the order as a judgment. That application is the motion now before me.
The burden of the Sheriff’s plea is that the plaintiff and the third party wrongfully interfered with the obligation of the Sheriff, under the mandate of this court, to reduce the property levied upon to possession for the protection of all parties concerned, including the defendant. The plaintiff and the third party contend, on the other hand, that the Sheriff never reduced the treasury bills to possession, that it was the United States Grand Jury, the United States Attorney and the United States court, and not the plaintiff or the third party, who were responsible for that situation, and that when the Sheriff failed to appear before the United States District Court upon the motion to quash, the parties could reasonably consider that the Sheriff was not interested and, the parties having made the stipulation with the approval of that court, the Sheriff may not now be heard to complain. On the argument of the application before me, it became apparent that what the contesting parties were substantively interested in was a resolution of the question as to whether, in the circumstances of this case, the Sheriff is entitled to the poundage demanded, and that therefore there is no need for a disposition of the application insofar as it seeks a direction for the turnover to the Sheriff of the treasury bills or the value thereof. The motion in that regard is therefore deemed withdrawn, without prejudice.
The Sheriff emphasizes that the poundage he .seeks is not a fee for his personal benefit, but an income of his office for the treasury of the City of Hew York, of which he is an officer. That *663 is immaterial to a disposition of the matter. The Sheriff is entitled to his fees as provided by the statute, irrespective of the purpose for which or for whose benefit he seeks to collect them.
In disposing of the present application, I need not conclude that the United States court had no jurisdiction to entertain a special proceeding as there entitled without having named therein the petitioner bringing on the application and the respondents against whom the proceeding was to be prosecuted. I do point out that there was no action or proceeding pending or instituted in that court to which the Sheriff was a party. True, in accordance with the terms of the order to show cause a copy thereof and of the supporting papers was served upon the Sheriff. But the order was not directed to him. He was not required to appear or protect his interests or to apprehend that his levy might be affected by any order entered in that proceeding. Indeed, upon the quash application, the plaintiff and the third party urged the paramount rights of the Sheriff as against those of the Grand Jury, and insisted that the securities be permitted to be delivered to the Sheriff in pursuance of the warrant of attachment issued out of this court. Doubtless, the United States District Court was legally competent to entertain, hear and determine any proceeding involving the quashing of any subpoena duces tecum issued out of that court requiring the production of documents before a Grand Jury constituted by that court. But it did not in that proceeding have jurisdiction of the Sheriff, of the warrant or levy of attachment, of the defendant or of the present action pending in this court. In short, the Federal court had no jurisdiction in the proceeding to quash the subpoena to determine ultimate title to the securities — and, indeed, did not assume to exercise any such jurisdiction. In my view, therefore, the Sheriff’s rights were not prejudiced by reason of his nonappearance before the United States court.
Even if, as now argued by the present respondents, the Grand Jury’s rights were paramount to those of the Sheriff, nevertheless, the stipulation, voluntarily entered into by the plaintiff and the third party, worked a prejudice to the rights of the Sheriff, which, I hold, were paramount to those of the plaintiff and of the third party. It is significant that the stipulation recites that “ the parties in interest having agreed to the following disposition ” of the motion made by the third party, and that the stipulation does not disclose that the Sheriff or the defendant herein had any interest in the matter whatsoever. It is to be noted, too, that the United States District Judge to whom the matter was submitted in Motion Part approved the stipulation “ upon the consent of the above attorneys ”, who signed and presented the *664 stipulation — the United States Attorney, the attorneys for the third party and the attorneys for the plaintiff — presumably the attorneys for all of “ the parties in interest ” (italics supplied). In the circumstances, the Federal court order did not and cannot affect the rights of the Sheriff in the premises.
It is urged by the plaintiff and the third party that — even dehors the order of the United States court — their rights were and are superior to that of the Sheriff under the laws of the State of New York, since he did not, in due course, reduce his levy to possession, and the warrant had thereby become void. I do not agree.
Subdivision 2 of section 922 of the Civil Practice Act states: ‘ ‘ In the event that within ninety days from the date of the service of the warrant, unless the time has been extended as herein provided, and in that event prior to expiration of the time as so extended, the sheriff has not taken into his actual custody all such property capable of manual delivery, or has not received payment, * * * and if no action or special proceeding for that purpose has then been commenced by the sheriff or by the plaintiff jointly with the sheriff, * * * the levy shall be void as to any such personal property not so reduced to the sheriff’s custody, paid, collected or assigned to him as to which no such action or special proceeding is pending, and after expiration of such time the sheriff shall have no right thereunder to take into his actual custody any such property capable of manual delivery, or to collect or receive any such debts, effects or things in action ’ ’.
In the light of that statute, it should be noted here again that the stipulation provided that the securities would be delivered by the third party to the United States Attorney for the purpose of making tests thereon, that they would then be delivered to the plaintiff within three weeks, that plaintiff was to retain them for 60 days thereafter, subject to call of the United States Government. The bills were delivered by the third party to the plaintiff, who delivered them to the United States Attorney on September 28,1960. They were redelivered by the United States Attorney to the plaintiff on October 18, 1960. Thus, before the expiration of the 90-day period, the plaintiff and the third party purported to and did exercise dominion over the treasury bills, without the knowledge of the Sheriff, and to his exclusion. The assertion that what was done was in aid of a Government request or demand for assistance in a criminal prosecution is immaterial and not altogether correct. The stipulation did not provide that, after the period during which the Government had possession of or the right to call for the delivery of the bills to it, they *665 would be redelivered to the third party having original possession, and upon whom the Sheriff’s levy had been served, but — strategically enough from the plaintiff’s point of view — were to be delivered to the plaintiff to do with them as it wished (the third party being indemnified by the plaintiff). And, moreover, the plaintiff did in fact redeem the bills and apply the proceeds to its own use — thus effectuating collection of its claim against the defendant without proceeding to a disposition of the present suit against the defendant, the very action in which the warrant of attachment had been issued to the Sheriff at the plaintiff’s request.
Hence, I hold that the contention that the attachment had lapsed by virtue of what had occurred and that therefore the levy lapsed and that the Sheriff lost his rights is without merit. The situation is the result of the plaintiff’s interference with the levy and the plaintiff’s collection through the means of the stipulation. Before the 90-day period specified in subdivision 2 of section 922 expired, the right of the Sheriff to poundage came into existence. When the Sheriff made the levy, it became effective, regardless of what the parties did thereafter without the consent of the Sheriff. Upon the making of the levy, the plaintiff was enabled to go forward with publication or otherwise to effectuate service of the summons. The plaintiff could have served the summons upon the defendant herein within 30 days of the issuance of the attachment and the securities could have been reduced to possession within 90 days after the levy or during any extended period of time. The plaintiff chose not to proceed in this fashion, but rather to utilize the combination of circumstances in the Federal court as a means of subtle but effective self-help. By so doing, the plaintiff wrongfully interfered with the Sheriff’s levy and effectuated collection, thus warranting a holding that the plaintiff is responsible for the payment of the poundage.
For the Sheriff to be entitled to poundage, it is not necessary that he shall have reduced the property levied upon to his physical possession or to have actual custody thereof. (See, e.g., McCloskey v. McGrath, 341 U. S. 475, 477.) The applicable statute (Civ. Prac. Act, § 1558) provides that: “ A sheriff is entitled for the services specified in this section to the following fees: * * * subdivision 22. If the action in which a warrant of attachment has been levied is settled either before or after judgment, the sheriff is entitled to poundage upon the value of the property attached * * *. Where a levy has been made under a warrant of attachment and the warrant of attachment is vacated or set aside by order of the court, the sheriff is entitled *666 to poundage ”. There is no claim or proof here that the action —meaning the present suit between the plaintiff and the defendant — has been “settled”, as that term is ordinarily understood. In fact, the defendant was not served with process in this action, or in the Federal court proceeding to quash the subpoena duces tecum or on the present motion. He has not been heard from one way or the other, and it cannot therefore as yet be said that this action has been “ settled ” within the meaning of subdivision 22 of section 1558 of the Civil Practice Act. But there is an adequate showing that, by what the plaintiff and the third party did, the levy has been rendered ineffective and the warrant in effect vacated. And that, in my view, suffices to entitle the Sheriff to the statutory fees.
In Campbell v. Cothran (56 N. Y. 279, 285) the Court of Appeals said: “ The authorities establish that a sheriff who has completed the service of an execution, is entitled to poundage, although the judgment and process be afterward set aside; and also when he has been prevented from fully executing the writ by the act or interference of the plaintiff.”
The reasoning behind this principle was thus stated by the court in Flack v. State of New York (95 N. Y. 461, 466): “ It has been uniformly held in England as well as in this country, under all statutes giving fees to sheriffs upon executions, that a judgment creditor cannot, after placing process in the hands of the officer and inducing him to move forward in the work of executing it, interfere to prevent its enforcement without thereby making himself liable for the compensation of the sheriff. (Alchin v. Wells, 5 Term R. 470; Hildreth v. Ellice, 1 Caines, 192; Campbell v. Cothran, 56 N. Y. 282.) These cases proceed upon an obvious equity, analogous to that underlying the familiar principle which debars a party to a contract from claiming the benefit of the non-performance of a condition precedent by the other party, where he has, by his own conduct, made performance thereof by such party impossible. ’ ’
The court further stated in the Flack opinion (p. 472): “ This right [to collect poundage] is made by the language of the statute to depend exclusively upon the collection of the money called for by the process; and we think no right to the statutory fees can arise in favor of the sheriff, except upon the collection of the execution, or the intervention of the plaintiff by the performance of some act which in laio is deemed to be the equivalent of collection ”. (Emphasis supplied.)
In Personeni v. Aquino (6 N Y 2d 35, 37) the court noted that section 1558 “ provides a percentage fee based on the amounts actually collected (subd. 20) and, when no collection has been *667 made, the Sheriff may, nonetheless, be entitled to poundage upon the value of the property levied upon (1) where a settlement is made after a levy, not exceeding the sum at which the settlement is made, or (2) where an execution has been 1 vacated or set aside ’ upon the value of the property levied not exceeding the amount specified in the execution (subd. 19 as it then was) ”. At page 38 the court said: *1 It is clear that the within case does not fall within the purview of those statutory exceptions allowing poundage without collection. Nonetheless, the appellant Sheriff claims he is entitled to his poundage because the failure of the plaintiff-respondent to proceed timely under subdivision 7 of section 687-a so interfered with his collection that it amounted to a vacatur of the execution.” Continuing, the court said (p. 38): “ Interference as a basis for allowing poundage without collection was first enunciated as an intervention of the plaintiff by the performance of some act which in law is deemed to be the equivalent of collection (Flack v. State of New York, 95 N. Y. 461; Campbell v. Cothran, 56 N. Y. 279) which in effect and substance contemplates an affirmative act on the part of the plaintiff which actively interferes with the execution of process and which, in effect, is equivalent to collection.” While, in the Personeni case, the court held that the facts there did not show that the plaintiff affirmatively interfered with execution of process, the case is quite in point in the present circumstances. The instant plaintiff’s acts did, in my view, amount to affirmative conduct on its part which actively interfered with the Sheriff and which amounted to and resulted in collection.
Now, as to the motion for poundage insofar as it is directed against the third party. I have been cited and I have found no case in point. (Cf. Eastern Metal Prods. Corp. v. Landers of Arkansas, Inc., 188 F. Supp. 616, 619 et seq.) But, as a matter of principle, I think the answer is plain. As I see it, what Harris, Upham & Co. did in this case involved it in liability for the Sheriff’s fee in an equal degree to that of the plaintiff. It was served with the warrant of attachment in this action at a time when it had possession of the negotiable securities in question. Its application to the United States court, as made, was ineffective to relieve it of that responsibility — and it seems that the third party fully recognized that fact when it obtained from the plaintiff a stipulation of indemnity. When, after the levy, it surrendered possession to the plaintiff, it violated the mandate of this court as expressed in the warrant. It thus ignored the levy at its peril, facilitating by its conduct the collection by the plaintiff of the plaintiff’s claim against the defendant without proceeding with the litigation, without proving the claim against *668 the defendant, without service upon the defendant, and without the knowledge of the Sheriff — thus subjecting to attack and perhaps disrepute the processes of this court.
The Sheriff’s motion to compel the payment of poundage is granted and an order to that effect may be settled.