Max Bloom, J.
This is a proceeding brought pursuant to CPLR 5239 to determine the respective rights of petitioner Art-Camera-Pix (Art), and the intervenor-respondent Pioneer Venture Corporation (Pioneer) to certain warrants issuable by respondent Cinecom Corporation (Cinecom) to respondent Barry Mahon.
The facts have been stipulated.
On June 10, 1962 Pioneer advanced to Cinema Syndicate, Inc., the sum of $20,000. Mahon, who was an officer and principal stockholder of the corporation personally guaranteed the loan. Cinema Syndicate, Inc., defaulted on this obligation and, as a result, personal liability fastened on Mahon.
On January 18, 1968, somewhat more than five and one-half years later, Art entered judgment against Mahon in the sum of $19,513.
Two years later, in February, 1970, Mahon became entitled to receive from Cinecom 3,000 warrants to purchase the stock of that corporation in return for certain services theretofore performed by him for Cinecom. The following month, Mahon informed Cinecom of his intention to assign these warrants to Pioneer and on March 27,1970, he did, in fact, execute the assignment in consideration of the forbearance by Pioneer to enforce the obligation owing by Mahon to Pioneer to the extent of $10,000.
More than a month after the assignment by Mahon to Pioneer, Art served upon Cinecom a restraining notice to garnishee, pursuant to CPLR 5222. On June 4, 1970 Art issued an execution with notice to garnishee to the Sheriff. Levy was made thereon on June 8, 1970. The following day, this proceeding in aid of the execution was brought against Cinecom and Mahon. Pursuant to order dated July 13, 1970, Pioneer intervened and interposed its answer and cross claim demanding that it be adjudged the rightful owner of the warrants, and that Art be excluded from all interest therein.
Under our law, the mere entry of judgment creates no lien against the personal property of the judgment debtor. The lien comes into existence only upon issuance of execution to the Sheriff (CPLR 5202; United States v. Pearson, 258 F. Supp. 686; Dean Constr. Co. v. Simonetta Concrete Constr. Corp., 37 F.R.D. 242; Ruppert v. Community Nat. Bank, 22 A D 2d 165, affd. 16 N Y 2d 589). Thus, the race, under State law, is to the swift. Since the assignment was first in time it is, absent *766 some statutory inhibition, entitled to precedence over the execution (Stathos v. Murphy, 26 A D 2d 500; Matter of Aird Is. v. De Paula, 29 Misc 2d 666; Matter of Neilson Realty Corp. v. MVAIC, 47 Misc 2d 260; Seamon v. Federated Films, 142 N. Y. S. 2d 324; Matter of Ideal Mercantile Corp., 143 F. Supp. 810, affd. 244 F. 2d 828, cert. den. 355 U. S. 856; Rockmore v. Lehman, 129 F. 2d 892, cert. den. 317 U. S. 700; cf. Matter of City of New York [Nassau Expressway], 56 Misc 2d 602).
Art claims to be relieved of this limitation by asserting that the assignment by Mahon to Pioneer created a 16 security interest ’ ’ and that the Uniform Commercial Code requires the filing of a financing statement to perfect all except specified security interests not here involved (Uniform Commercial Code, §§ 9-102, 9-302; Recchio v. Manufacturers Trust Co., 55 Misc 2d 788). Necessarily, therefore, we are concerned with the meaning of the term 1 £ security interest ’ ’. The code (Uniform Commercial Code, § 1-201, subd. [37]), so far as is here material, defines a ££ security interest” as ££ an interest in personal property or fixtures which secures payment or performance of an obligation. * * # The term also includes any interest of a buyer of accounts, chattel paper or contract rights which is subject to Article 9. ’ ’
Mahon’s assignment of the warrants to Pioneer was not to secure payment of some part of the obligation owing to Pioneer. The transfer was in payment of $10,000 of that debt. From the moment of assignment Mahon had neither title to nor interest in the warrants. He could not reclaim them by payment of the extinguished indebtedness. Conversely, if a sale of the warrants by Pioneer on the open market brought less than the portion of the debt extinguished by the transfer, Pioneer could not look to Mahon for the balance. The assignment terminated Mahon’s interest in the warrants and Pioneer’s interest in that portion of the debt which it had agreed to forbear from enforcing. Thus, it is clear that Pioneer’s interest in the warrants was not to secure ‘1 payment or performance of an obligation ’ ’. Hence, the first portion of the definition has no application to the situation here presented.
Nor does the second part of the definition afford comfort to petitioner. Article 9 of the Uniform Commercial Code is, by its terms, applicable to a “ contract right ’ ’. Under section 9-106 a 11 contract right ’ ’ is defined as 1 £ any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper ”. (Italics supplied.) Since it is agreed that Mahon’s right to the warrants had been earned by performance at least a month prior to the assignment, *767 it was not at the time of Art’s actions to enforce its judgment a ‘‘ contract right ’ ’.
The distinction between a warrant, the right to which has been earned, and a contract right, is emphasized by article 8 of the Uniform Commercial Code, which accords to a warrant the status of a security (Burnside & Co. v. Havener Securities Corp., 25 A D 2d 373; Cohn, Ivers & Co. v. Gross, 56 Misc 2d 491; 60 N. Y. Jur., Transfers of Securities, § 6). Under subdivision (1) of section 8-102 of the Uniform Commercial Code, a security is defined as an instrument which “ (i) is issued in bearer or registered form; and (ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer ”.
The official comment on the term ‘ ‘ security ’ ’ points out that the definition ‘ ‘ is functional rather than formal, and it is believed will cover anything which securities markets, including not only the organized exchanges but as well the ‘ over-the-counter ’ markets, are likely to regard as suitable for trading. For example, transferable warrants evidencing rights to subscribe for shares in a corporation will normally be ‘ securities ’ within the definition, since they (a) are issued in bearer or registered form, (b) are of a type commonly dealt in on securities markets, (c) constitute a class or series of instruments, and (d) evidence an obligation of the issuer, namely, the obligation to honor the warrant upon its due exercise and issue shares accordingly ’ ’. (Italics supplied.) (McKinney’s Cons. Laws of N. Y., Book 62%, Part 3, Uniform Commercial Code, p. 163.) So long as. the right to the warrants had already accrued, the fact that they had not yet been issued did not detract from Mahon’s right to assign them (cf. General Obligations Law, § 13-101 et seq.)
The framers of the statute have thus made plain their purpose to treat a warrant, the right to which had already vested, as a “ security ” rather than as a “ contract right ”. Hence, neither facet of the definition of ‘ ‘ security interest ’ ’ is applicable to the assignment from Mahon to Pioneer. It follows that article 9 had no application to the transaction. By consequence, the filing of a financing statement was not necessary to give vitality to the assignment.
Accordingly, there is no merit to Art’s claim to the warrants, and in the circumstances here presented, Pioneer is entitled to *768 judgment excluding petitioner from any interest in the warrants in question.
It may not be inappropriate to point out that at the time of the issuance of execution to the Sheriff, Art was not without remedy. The assignment was clearly a preferential payment (U. C. Code, tit. 11, § 96). As such, it constituted an act of bankruptcy (U. S. Code, tit. 11, § 21). Had Art filed an involuntary petition in bankruptcy and had adjudication resulted, the trustee could have acquired title to the warrants which then would have been held for the benefit of all of Mahon’s creditors, and Art would have been entitled to its proportion thereof. Art elected to seek more than its fair share. In so doing, it forfeited all.
Settle judgment.