Elizabeth K. KNAPP, Plaintiff-Appellee-
Appellant,

v.

Walter P. McFARLAND, Defendant-
Appellant-Appellee.

Walter P. McFARLAND, Plaintiff-
Appellant,

v.

Lester J. TANNER and Arthur S.
Friedman, Defendants-Appellees.

Nos. 523, 525, Dockets 71–1982, 71–1993.

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1972.

Decided March 28, 1972.

Samuel N. Greenspoon, New York City (Eaton, Van Winkle & Greenspoon, New York City, on the brief), for Walter P. McFarland, defendant-appellant-appellee and plaintiff-appellant.

Arthur S. Friedman, New York City (Tanner & Friedman, New York City, on the brief), for Elizabeth K. Knapp, plaintiff-appellee-appellant and pro se.

Before KAUFMAN, MANSFIELD and OAKES, Circuit Judges.

MANSFIELD, Circuit Judge:

This action by an assignee (Elizabeth K. Knapp) for recovery of legal fees for services rendered by Lester J. Tanner, Esq. ("Tanner") and Arthur S. Friedman, Esq. ("Friedman") to Walter P. McFarland ("McFarland") was tried before Judge Levet, sitting without a jury. The court awarded $154,999.54 together with costs and disbursements to plaintiff and dismissed McFarland's third-party claims against Tanner and Friedman seeking repayment of certain fees because of alleged breach of their fiduciary duty to McFarland, their client. Both sides appealed, plaintiff from dismissal of a claim in the sum of $775 for prosecution of criminal contempt proceeding against Aaron R. Fodiman. We affirm except to the extent indicated below. One issue, the fairness and reasonableness of a contract to pay a bonus of $155,000, is remanded for a further hearing and finding.

The essential background facts are set forth accurately and in detail in Judge Levet's opinion. For present purposes we need only review the highlights. In 1964 McFarland and a business associate, Edward P. Johnson, retained Tanner & Friedman to represent them as attorneys in the enforcement of claims against persons known as the "Gregory group" arising out of agreements with respect to four large high-rise residential apartment buildings in Arlington, Virginia, known as "Arlington Towers." Under the agreements McFarland, Johnson and one John Loughran, who had been the sponsors of the apartment house project, ownership of which had passed to the Gregory group, were granted the right to reacquire one or more of the buildings for a limited period and at certain formula prices, together with certain other rights, including the right to participate in profits from the issuance and sale of stock and debentures by the project and in the proceeds from development or sale of a certain parcel of land.. In 1957 McFarland and his two associates brought suit against the Gregory group in the United States District Court for the Southern District of New York claiming breach of these agreements, which resulted in a decree in favor of McFarland granting specific performance. Efforts by McFarland and his associates to reacquire the buildings in accordance with the court's decree, however, were frustrated by the Gregory group, leading to more proceed-

ings before Judge Dimock of the district court and to the retainer of Tanner & Friedman by McFarland and Johnson to enforce their rights against the Gregory group, including the right to reacquire the buildings at the formula price.

The retainer agreement, conceded by McFarland to be fair and reasonable, was set forth in a letter from Tanner to McFarland dated September 29, 1964 as follows:

"This will confirm our understanding that the services which we render in connection with the Arlington Towers matters are to be billed periodically at our minimal time charges, which are $30 per billable hour for time which Arthur and I devote to the matter, and $15 per hour for associates' time. We will bill you on this basis, and the enclosed statement brings this arrangement up to September 1, 1964. We will, during the year, give you as well a statement for out-of-pocket disbursements expended by us.

"It is also our understanding that if we are successful in achieving a good result for you and Ed Johnson, either by way of litigation or settlement of this dispute, that there will be an upward adjustment of fees, based upon achievement."

As the result of further conduct of the litigation by Tanner & Friedman, in which protracted settlement discussions were held, followed by a new application on August 2, 1965 to Judge Dimock to compel performance, the Gregory group were finally forced to convey the buildings to McFarland and Johnson on August 30 and 31, 1965, at the formula price of $19.9 million. On August 4, 1965, while these litigation and settlement steps were in progress, McFarland and Tanner orally agreed that in the event that Tanner and Friedman were successful in forcing the Gregory group to part with the buildings, McFarland and Johnson would pay them an additional bonus of $155,000 over and above the charges based on time spent (at $30 per hour for partners and $15 per hour for associates).

The agreement to fix the bonus at $155,000 is supported by correspondence between Tanner and McFarland in August 1965, later oral and written confirmations of McFarland and Johnson, and testimony of Tanner and Friedman. Although McFarland grumbled about failure to achieve a settlement at the figure of $18,425,000, he was well aware at the time when he assented to the $155,000 bonus that the settlement called for payment of the formula price of $19.9 million, a price which he considered favorable since, according to his own estimate, he was obtaining buildings having a market value of $25 million. Furthermore, in seeking to defer payment of the fees due Tanner & Friedman, including the bonus, he did not deny the existence of the agreement to pay the $155,000 bonus.

Following the reacquisition of the buildings Tanner & Friedman, during the period from September, 1965 through June, 1968, continued to render legal services to McFarland and Johnson pursuant to their September, 1964, retainer agreement. The suit against the Gregory group for conveyance of securities and for compensation allegedly due McFarland was prosecuted by them, leading to a protracted trial before Judge Dimock, which resulted in receipt of $1 million in settlement of certain claims, and two judgments awarding their clients $345,000 and $700,088, the latter of which was reversed upon appeal. (See McFarland v. Gregory, 363 F.2d 857 (2d Cir.1966) and 373 F.2d 393 (2d Cir.1967)). For these services Tanner & Friedman billed McFarland and Johnson $276,028, plus $27,992 for disbursements. Johnson paid his share, plus 50% of the $155,000 bonus. After deducting certain payments received from McFarland, Tanner & Friedman claimed a balance due from him of $37,614.31 plus 12½% of any additional recoveries in excess of $357,187 in pending litigation.

In June, 1969, Knapp, as assignee, filed a complaint against McFarland seeking (first claim) recovery of $77,-

500, which represented 50% of the bonus and (second claim) $37,614 plus 12½% of certain excess recoveries, pursuant to the agreements of September, 1964 and August, 1965. In addition the complaint (third and fourth claims) sought, in the alternative, recoveries on a *quantum meruit* theory. McFarland's answer admitted the making and fairness of the September, 1964, retainer agreement but alleged that the August, 1965, agreement to pay the $155,000 bonus was conditioned on his reacquisition of Arlington Towers for $18,425,000. In addition he interposed a counterclaim against Tanner & Friedman for $122,-435, charging breach of fiduciary duty, falsification of time charges, and rendition of unnecessary and unauthorized services. During the period from March 30, 1971 to April 8, 1971, the case was tried before Judge Levet, who sat with a jury until all parties waived a jury on April 6, 1971, the trial thereafter proceeding without one. On July 1, 1971, Judge Levet filed his opinion, with detailed findings of fact and conclusions of law, upholding plaintiff's claims, except for the *quantum meruit* claims and for the sum of $775 claimed for services rendered in prosecuting a charge of criminal contempt at the direction of Judge Dimock against Aaron R. Fodiman, one of the Gregory group's counsel.

Judge Levet further concluded that McFarland had failed to prove his affirmative defense and his cross-claim against Tanner & Friedman, which was dismissed. McFarland's counsel, a few days after the filing of the decision, advised the court by letter that its entry of judgment for one-half of the $155,000 bonus was premature for the reason that it had failed to afford McFarland an opportunity to offer evidence with respect to the fairness and reasonableness of the $155,000 bonus, which was to be the subject of a deferred hearing. Thereupon Judge Levet, in a supplemental opinion dated July 9, 1971, stated his understanding that at the conclusion of trial the issue was to be decided on the evidence received without further hearing

and made an additional finding to the effect that the $155,000 bonus agreement was fair and reasonable, stating the facts forming the basis of his finding.

Based on our review of the record we find, with the modifications hereinafter noted, that Judge Levet's detailed findings, which reflect his usual painstaking analysis and appraisal of the evidence, are fully supported by substantial evidence. It is equally clear that the record before the district court called for rejection of McFarland's defense and counterclaim based on alleged action by Tanner and Friedman adverse to their clients' interest or in breach of their fiduciary duty.

Turning first to McFarland's charges that Tanner and Friedman breached their fiduciary duty to him, we note certain aspects of the claim were abandoned (e.g., that Tanner and Friedman had testified on behalf of Johnson in a suit between him and McFarland) or were unsupported by proof (e.g., that Tanner and Friedman had falsified charges or charged McFarland for unnecessary or duplicative work). The principal remaining claims of adverse interest are based on the fact that when McFarland brought an action in Virginia against Johnson in November, 1967, claiming that Johnson had no substantial interest in Arlington Towers or in the proceeds of the pending New York action against the Gregory group, Tanner and Friedman assisted Johnson in obtaining counsel to represent him in the Virginia suit, supplied him with copies of papers received by them in their capacity as counsel in the New York action against the Gregory group and, despite contrary holdings by Judge Dimock, took the position that Johnson was an equal owner with McFarland of the claims in the New York action against the Gregory group. The evidence revealed that in the spring of 1967, at a time when the suit against the Gregory group was being tried before Judge Dimock by Tanner and Friedman on behalf of McFarland and

Johnson, disputes arose between the latter with respect to Arlington Towers. When Johnson sought to consult Tanner and Friedman about these differences they, rather than become involved in the dispute, referred him to a reputable Washington, D. C. lawyer who had not had any connection with the McFarland-Johnson or Gregory groups. In November, 1967, McFarland, the plaintiff in the suit against the Gregory group in New York, without the knowledge of Tanner and Friedman, commenced the Virginia action against Johnson, claiming that except for a personal apartment Johnson had no interest in the Arlington Towers claims which were the subject of their New York suit against the Gregory group and seeking rescission of an August, 1965, agreement purportedly conveying a half-interest in Arlington Towers to Johnson. Upon learning of the lawsuit Tanner and Friedman believed in good faith that, since the allegations as to ownership interest were inconsistent with testimony in the New York suit against the Gregory group to the effect that Johnson owned an interest in the Arlington Towers rights, the claims made on behalf of McFarland and Johnson in the New York suit might be jeopardized. Accordingly they sought a joint meeting with their clients to discuss the possible repercussions of the Virginia suit and offered to review any further pleadings in that suit with a view to protecting their clients' interest in the New York action, an offer that was taken up by Johnson and his counsel but not by McFarland. In addition they supplied to counsel for both parties in the Virginia suit copies of certain documents from the New York action, the papers furnished to Johnson consisting of matters of public record and documents by which McFarland and Johnson had purportedly acquired rights in Arlington Towers on August 31, 1965.

In the meantime the Gregory group moved to reopen the New York suit before Judge Dimock in order to put into evidence McFarland's Virginia complaint, contending that it was inconsistent with testimony given by McFarland and Johnson in the New York suit. At a meeting held on January 4, 1968, with their clients and Virginia counsel, Tanner and Friedman were given conflicting instructions with respect to the grounds upon which the motion to reopen should be opposed. Thereupon they moved before Judge Dimock to withdraw as counsel on the grounds of conflict in interest between their clients and receipt of conflicting instructions. Judge Dimock denied the motion, ruling that "the issue of any interest of Johnson in the claim here was not before the Court was not to be determined," that the suit had properly been prosecuted by McFarland as a party to the contract with the Gregory group, and that no conflict of interest in the prosecution of the suit against the Gregory group existed merely because of a dispute between McFarland and Johnson as to the ownership of the claim.

We agree with Judge Levet's conclusion that Tanner and Friedman did not place themselves in the position of representing interests adverse to their representation of McFarland in his suit against the Gregory group. Their reference of Johnson to a reputable attorney whom he could consult regarding his differences with McFarland and their furnishing to Johnson of documents from the files of the Gregory suit did not conflict with their duty to McFarland, who apparently overlooks the fact that they owed a duty to Johnson as a joint client. See generally, 8 Wigmore, Evidence § 2312 at 603–04 (McNaughton Rev. 1961); Car and General Life Insurance Corp. v. Goldstein, 179 F.Supp. 888, 891 (S.D.N.Y.1959), affd. per curiam, 277 F.2d 162 (2d Cir. 1960). When McFarland made statements in his Virginia lawsuit that were seemingly inconsistent with his position in the New York action, it was not unreasonable for Tanner and Friedman to offer to review any further pleadings or statements made in the Virginia suit, or to confer with their clients regarding the possible

impact of inconsistent statements or, when they received conflicting instructions, to move for withdrawal as counsel. The fact that Judge Dimock denied their motion after being advised that Johnson's interest in the New York suit was minimal did not change the joint representation of McFarland and Johnson or imply that Tanner and Friedman had been guilty of any conflict of interest. McFarland has failed to demonstrate how the conduct of Tanner and Friedman could adversely affect their vigorous and successful prosecution of the Gregory suit on behalf of McFarland and Johnson, who were their joint clients at all relevant times.

■ Equally frivolous is McFarland's claim that Judge Levet committed reversible error in considering a portion of the transcript of McFarland's testimony in the Gregory suit, which was furnished by Friedman in response to a request made by the court on June 1, 1971, after both sides had rested. A copy of the statement was simultaneously furnished by Friedman to McFarland's counsel, who replied in a lengthy letter to Judge Levet dated June 8, 1971, which did not suggest that it would be improper for the court to receive or consider the transcript. If such an objection had been made, the court might have decided either not to consider it or to reopen the record *sua sponte* and hold a further hearing. McFarland's counsel, however, sought instead to persuade the court that the evidence was not relevant because the portion of McFarland's testimony in the Gregory suit furnished to the court referred to a point in time prior to Johnson's transfer of his interest to McFarland and because in any event it had been implicitly rejected by Judge Dimock's later opinion and decree. Regardless of the lack of merit in these arguments, it is readily apparent that McFarland waived the objection now advanced by him.

■ McFarland does raise two serious questions. The first is that he was denied the opportunity to offer evidence at a deferred session to be held with respect to the fairness and conscionability of the $155,000 bonus fee because Judge Levet decided the issue prematurely. Under New York law plaintiff had the burden of proving not only that McFarland agreed to pay a bonus of $155,000 but that the amount was fair and reasonable and not the product of overreaching on the part of counsel. Matter of Howell, 215 N.Y. 466, 472, 109 N.E. 572 (1915); Matter of Schanzer, 7 App.Div.2d 275, 182 N.Y.S.2d 475 (1st Dept. 1959), affd. mem., 8 N.Y.2d 972, 204 N.Y.S.2d 349, 169 N.E.2d 11 (1960). At the outset the court directed that trial of the issues with respect to the alleged $155,000 bonus agreement would be bifurcated, the jury being asked first to decide whether such an agreement had been made; if so, proof as to the reasonableness of the amount would then be taken at a deferred session and the issue of fairness and reasonableness would be submitted to the jury for determination. During trial the court refused to accept certain evidence proffered on the latter issue, reaffirming that trial with respect to it had been deferred pursuant to Rule 42(b), F.R.Civ.P. The deferment of the reasonableness issue was again confirmed by the court when the parties waived a jury and continued trial before Judge Levet sitting without a jury.

Notwithstanding the deferment of the reasonableness issue the parties did introduce a great deal of evidence with respect to the making of the $155,000 bonus agreement that would be relevant to reasonableness, including the circumstances and objective of McFarland's retainer agreement with Tanner and Friedman, i.e., the obstacles encountered by them, the time and effort expended in the prosecution of the Gregory suit, conversations among parties and counsel as to the bonus, the market value of buildings recovered, the economic benefit realized by McFarland as a result of counsel's efforts, McFarland's background as an investor and real estate de-

veloper, and his experience in dealing with other attorneys.

When Judge Levet filed his July 1, 1971 decision to the effect that Tanner and Friedman were entitled to recover the agreed-upon $155,000 bonus Mc-Farland objected to the entry of judgment on the ground that he had been denied the opportunity to offer proof as to reasonableness. Judge Levet thereupon filed a supplementary opinion pointing out that at the conclusion of the trial he had advised counsel that "this [trial] relates to *all* matters as to whether or not the $155,000 specific fee is sustained" and finding on the basis of the evidence already introduced that the bonus contract was "a fair and reasonable compensation agreement." McFarland argues that in view of its earlier rulings the court's statement should not be construed as changing its previous decision deferring the issue of reasonableness for later hearing. We agree.

■ Although the court had the power to revoke its earlier direction to the effect that the trial would be split, we believe that where (as here) the court had clearly and repeatedly deferred trial of the reasonableness issue, it could effectively change its decision only by an equally clear statement, coupled with a fair opportunity to offer additional proof with respect to the deferred issue. Although Judge Levet may have intended his closing statement to have this effect, we do not believe that it was sufficiently unambiguous to meet the standard of due process that in our view should apply. See, e.g., Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Furthermore, the record reveals that immediately after making the above-quoted statement Judge Levet went on to say "Reserved, however, are any phases of the case which are not determined."

Plaintiff, relying principally on the Supreme Court's decision in Partmar Corporation v. Paramount Pictures Theatres Corp., 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954), urges that, even as-suming that the reasonableness issue continued to be deferred, all circumstances regarding the issue were introduced in connection with the trial of the question of the *existence* of the $155,000 agreement and that the court had the power to decide that no genuine issue of fact remained. We disagree. Although most of the essential proof as to conscionability may well have been received by the court in connection with other issues and McFarland not only cross-examined others but also testified personally with respect to circumstances bearing on reasonableness, he was not given the opportunity to introduce expert witnesses, and he may not have fully cross-examined Tanner and Friedman as to the issue. The situation here is unlike that in Partmar, where the defendant was given ample opportunity on the trial of plaintiff's case to present evidence with respect to the identical issue raised by his counterclaim, on which trial had been deferred, and the court further concluded that the only evidence not offered, the *Paramount* case decree, would not have changed the result.

Accordingly, we conclude that the court's supplemental finding as to the reasonableness of the $155,000 bonus agreement should be set aside and the case remanded for a further hearing on that issue. In view of the extensive evidence already received that is relevant to the issue, we believe that McFarland should be limited upon the hearing to cross-examination of Tanner and Friedman and to the introduction of such expert witnesses as he may wish to offer. In remanding this aspect of the case for a further hearing and findings, we do not wish to imply that the court's finding of reasonableness was not supported by substantial evidence in the record as it now stands or that the additional proof (which we, of course, have not seen) will necessarily change the result. We simply believe that McFarland should have the opportunity to offer the foregoing additional proof and to argue that it calls for a contrary decision on

the issue. We are confident that the additional evidence will, together with that already introduced, be fairly considered by Judge Levet in making findings on the issue.

We reject as meritless McFarland's argument that the denial of an opportunity to offer further evidence as to reasonableness had the effect of nullifying his waiver of a jury trial. The record is clear that while McFarland waived a jury on the understanding that there would be a deferred hearing as to the reasonableness issue, the waiver was absolute. The deferred hearing was not to be before a jury, but before Judge Levet sitting without a jury. Thus our remand gives McFarland the deferred non-jury hearing which he requested at the time when he waived a jury trial.

■ We turn next to the district court's decision that Tanner and Friedman were entitled to recover for work done in prosecuting their motion to withdraw as counsel for McFarland in the Gregory suit because of possible conflict of interest between their two clients. We do not question the reasonableness of counsel's apprehension that, because of inconsistent statements by their clients in the two lawsuits and the issuance of differing instructions as to the grounds upon which Gregory's motion to reopen should be opposed, their recovery in the Gregory suit might be jeopardized. However, for the reasons stated by Judge Dimock in denying counsel's motion, their clients' conduct, while rendering their handling of the Gregory suit difficult, was not sufficiently egregious to prevent counsel from continuing to serve their clients' interests in the litigation effectively. In short, they were not hampered in prosecuting the action. Their application to withdraw was denied, Judge Dimock pointing out that the differences between McFarland and Johnson were not before him except to the extent that inconsistent statements as to Johnson's interest might be offered as to credibility, and that the differences were not sufficient to prevent counsel from prosecuting the suit. Neither side has furnished us with any relevant authority bearing directly on the question of whether an attorney who unsuccessfully seeks permission to withdraw may bill his client for services performed in the effort. But application of basic principles seems to us to call for denial of such an allowance, particularly where, as here, McFarland opposed the application and gained no benefit from it. Accordingly we reverse that part of the district court's judgment awarding $1,562.50 for such services.

■ We find no merit in the other arguments advanced by McFarland upon his appeal. Finally, we turn to plaintiff's cross-appeal from the district court's denial of her claim for $775 for services rendered by Friedman as "special prosecutor" by appointment of the court in connection with the Fodiman criminal contempt proceeding. It is settled that:

> "[A] proceeding for criminal contempt, unlike that for civil contempt, is between the public and the defendant, is an independent proceeding at law, and no part of the original cause . . . ."

Michaelson v. United States, ex rel. Chicago, St. P, M & O R Co., 266 U. S. 42, 64, 45 S.Ct. 18, 19, 69 L.Ed. 162 (1924).

Thus, in prosecuting the criminal contempt against Fodiman, Friedman acted as an officer of the court and for its benefit. We conclude that at least in the absence of an agreement by McFarland or any benefit to him as a result of the criminal contempt prosecution,[1] he cannot be called upon to pay for Friedman's efforts in that re-

1. Such a benefit might well arise if the court, in its discretion, ordered payment to McFarland of part of a fine assessed in the event of conviction, as it has the right to do in such cases. See, e. g., Michaelson v. United States, 266 U.S. 42, 65, 45 S.Ct. 18, 69 L.Ed. 162 (1924).

gard. See generally Matter of Loomis, 273 N.Y. 76, 6 N.E.2d 103 (1937); Matter of Linder's Estate, 17 A.D.2d 949, 234 N.Y.S.2d 53 (2d Dept. 1962).

The case is remanded for further proceedings consistent herewith. The district court may in its discretion direct immediate entry of final judgment as to all claims disposed of by our decision. No costs are allowed to any of the parties.