**Elizabeth K. KNAPP, Plaintiff-Appellee,**

v.

**Walter P. McFARLAND, Defendant-Appellee-Appellant,**

**Sheriff of the City of New York, Appellant-Appellee.**

**Nos. 524, 526, Dockets 71-1983, 71-2195.**

United States Court of Appeals, Second Circuit.

Argued March 20, 1972.

Decided May 1, 1972.

As Modified on Denial of Rehearing June 1, 1972.

Samuel N. Greenspoon, New York City (Eaton Van Winkle & Greenspoon, New York City, on the brief), for defendant-appellee-appellant.

Arthur S. Friedman, New York City (Tanner & Friedman, New York City, on the brief), for plaintiff-appellee.

Joseph P. Brennan, New York City (Louis Dickstein, New York City, on the brief), for appellant-appellee.

Before HAYS, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal deals with one more chapter in the efforts of Elizabeth Knapp, assignee of the law firm of Tanner & Friedman, to enforce a judgment of the

United States District Court for the Southern District of New York against McFarland awarding her legal fees in the sum of $154,999.54 for services rendered by Tanner & Friedman to McFarland. Upon appeal that judgment was recently affirmed in part, reversed in part and remanded for further proceedings. See Knapp v. McFarland, 457 F.2d 881 (March 28, 1972). The present controversy arises from the method Knapp chose to obtain execution on the judgment. More specifically, McFarland appeals from the district court's order denying his motion to vacate the notice of execution and the Sheriff appeals from its order denying poundage on the ground that the execution and levy never became effective. The first of these two orders is affirmed and the second is reversed.

Discussion of the issues necessitates a brief review of Knapp's efforts to enforce the federal judgment. That judgment was entered on July 14, 1971, and on July 19, 1971 costs in the sum of $2,308.52 were taxed against McFarland. On July 29, 1971 Knapp's counsel (Tanner & Friedman) filed a transcript of the judgment in the office of the Clerk of New York County and on the same day issued an execution under the heading of the Supreme Court of the State of New York, New York County, to the Sheriff of the City of New York, directing him to levy upon certain treasury bills held by the Chemical Bank in a custody account for the Security National Bank of Washington, D.C. ("Security").

At the time of the levy Security was escrow agent for the proceeds of the sale of the Arlington Towers Apartments in Arlington, Virginia, in which McFarland and one Edward P. Johnson had interests that were then the subject of litigation between them in the Virginia state courts. Security, in turn, had placed some of the proceeds of the sale in the treasury bills in a custody account held for its account by the Chemical Bank, upon which the levy was sought. On July 27 the Sheriff served the writ of execution on the Chemical Bank. However, he never collected anything from the bank toward satisfaction of the judgment. Simultaneously Tanner & Friedman also obtained a restraining notice from the United States District Court which it caused to be served on the Chemical Bank.

By memorandum opinion dated September 17, 1971 Judge Levet denied McFarland's motion to vacate the Sheriff's levy, holding that pursuant to 28 U.S.C. § 1962 and New York Civil Practice Law & Rules ("CPLR") § 5018 (b) the filing of the federal judgment with the New York County Clerk gave it the same effect as a judgment of the New York Supreme Court, including the right to have execution issued and a levy made as provided by New York law. See CPLR § 5230(b). Since McFarland had in the meantime filed a supersedeas bond in the district court, Judge Levet on September 20 released the restraining order that had been served on the Chemical Bank.

Two days later, after the Sheriff had submitted to the jurisdiction of the district court, Judge Levet released the execution except to the extent of $11,000 (to cover the Sheriff's claim to poundage, not yet determined). In an opinion dated October 14, 1971, he decided that the Sheriff was not entitled to poundage and that his levy was ineffective because he had not collected or attempted to collect the funds in the Chemical Bank in which McFarland had an interest. On October 26 Judge Levet accordingly ordered the execution on the Chemical Bank vacated in its entirety. Although we agree with the district court that the method of execution engaged in here was proper, we disagree with its conclusion that the Sheriff's failure to collect anything under the levy bars him from recovery of poundage.

Turning first to the question of whether the method of execution employed here was valid, the controlling federal statute, which in our view au-

thorizes the method used, is 28 U.S.C. § 1962, which provides:

"Every judgment rendered by a district court within a State shall be a lien on the property located in such State *in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State,* and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State." (Emphasis supplied)

It will be noted that the statute, by speaking of "property" without limitation, encompasses both real and personal property of the judgment debtor.

■ In exercise of the option thus created by 28 U.S.C. § 1962 the State of New York enacted what is now CPLR § 5018(b), which provides that:

"A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment *in the same manner and with the same effect* as a judgment entered in the supreme court within the county." (Emphasis supplied)

Under this statute a federal judgment, upon being docketed with a clerk· of a county of the state, becomes a judgment of a Supreme Court of the State of New York for purposes of enforcement in that county. In this respect § 5018(b) gives to a federal judgment docketed in the county clerk's office an effect similar to that given by CPLR § 5018(a) to the judgment of a state court rendered in another county which is so docketed. See generally Brownell v. Parsons, 220 N.Y. 483, 487, 116 N.E. 366 (1917); Dieffenbach v. Roch, 112 N.Y. 621, 626, 20 N.E. 560 (1889); Quackenbush v. Johnston, 249 App.Div. 452, 453–454, 293 N.Y.S. 123, 125 (3d Dept. 1937).

■■ Without more the docketing of a judgment, state or federal, in the office of the county clerk creates a lien upon the debtor's realty in that county. CPLR § 5203. E. g., United States v. Hodes, 355 F.2d 746, 748 (2d Cir.), cert. granted, 384 U.S. 968, 86 S.Ct. 1858, 16 L.Ed.2d 680 (1966), cert. dismissed, 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967); Hulbert v. Hulbert, 216 N.Y. 430, 438, 440, 111 N.E. 70 (1916). To enforce the judgment as a lien against the debtor's personalty, however, the judgment creditor must, after docketing of the judgment, deliver a writ of execution to the sheriff for levy, CPLR § 5202(a); 9 Carmody-Wait, Cyclopedia of N.Y. Practice § 64:140 at 480 (2d ed. 1966); e. g., Art-Camera-Pix v. Cinecom Corp., 64 Misc.2d 764, 765, 315 N.Y.S.2d 991, 992 (Sup.Ct.N.Y. County 1970).

■ In accordance with the procedure thus contemplated by 28 U.S.C. § 1962 and implemented by CPLR § 5018(b), Knapp docketed the judgment in the office of the New York County Clerk and issued an execution to the Sheriff of the City of New York under the caption of the Supreme Court of the State of New York, New York County.[1] We believe that this was the proper procedure.

1. Because the effect of docketing a federal judgment under CPLR § 5018(b) is to transform it into a judgment of the State for purposes of enforcement, it is no violation of F.R.Civ.P. 4(c) for the sheriff rather than the federal marshal to levy on the judgment debtor's personalty. Cf. 7 J. Moore, Federal Practice ¶ 69.04 [2] n. 1, at 2413 (1971); Yazoo & Mississippi Valley R. R. Co. v. Clarksdale, 257 U.S. 10, 24–25, 42 S.Ct. 27, 66 L.Ed. 104 (1921).

██ McFarland argues that before a judgment of the United States District Court for the Southern District of New York may be enforced as a New York judgment the judgment creditor must also comply with the Uniform Enforcement of Foreign Judgments Act, CPLR Art. 54, which specifies certain additional requirements for enforcement of foreign judgments in New York. At first blush Art. 54 would appear to apply, since it defines a "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." However, our function is to give effect to the Legislature's intent, and where a literal reading leads to an illogical result, the tempering influence of reasonable construction must be applied. "There is no surer way to misread any document than to read it literally." Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944) (per Learned Hand, C. J.). A glance at the legislative history of the statutes under consideration makes it clear that Art. 54 was intended to apply only to money judgments rendered by sister states of the United States and not to such judgments of federal district courts, whether in New York or elsewhere. In its *Report to the 1969 Legislature in Relation to the Civil Practice Law and Rules*, the Judicial Conference of the State of New York noted that under the law as it existed at that time (prior to passage of the Uniform Act) a judgment of a federal district court for a sum of money rendered outside New York could be enforced here by filing

"a certified copy of the judgment in a United States district court in [the federal district court in] New York under 28 U.S.C. § 1963 and thereafter fil[ing] a transcript of the judgment so registered in the office of the clerk of any county of New York State under CPLR 5018(b)." State of N. Y., Judicial Conf., 15th Ann.Rep., Appendix D. at A105 (1970).

Section 5018(b), which allows docketing in the county clerk's office of federal judgments "rendered *or filed* within the state" (emphasis supplied), provides a method for enforcement not only of judgments of federal district courts "rendered" in a district located within the state but also of judgments of federal district courts elsewhere which have been "filed" in a federal court within the state pursuant to 28 U.S.C. § 1963.[2] State of N.Y., 3d Preliminary Rep. of Advisory Comm. on Practice and Procedure 213 (1959). There was no need, therefore, for the enactment of a new statute to permit enforcement by registration of judgments rendered by federal district courts, whether located inside or outside of New York.

██ The situation with respect to the enforcement of foreign *state* judgments, however, was different prior to the enactment of Art. 54. No provision comparable to § 5018(b) for enforcement by registration was made for judgments of sister states of the United States. This omission was noted by the Judicial Conference of the State of New York in its Report to the 1969 Legislature, *supra*, as follows (at p. A106):

"Since a registered federal judgment may be docketed in the county clerk's office under CPLR 5018(b), New York in effect uses a registration system for federal district court judgments of other states while the benefits of a registration procedure are

---

2. 28 U.S.C. § 1963:

"§ 1963. *Registration in other districts*

"A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judg- ment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

"A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien."

denied to judgments of the sister states."

The purpose of Art. 54, therefore, was not to provide for enforcement by registration of federal judgments in New York, which was already authorized by CPLR § 5018(b), but for judgments of sister states. Furthermore, even if Art. 54 were construed as providing an alternative method of enforcement of federal judgments, there is no evidence that it was intended to repeal or modify the procedures authorized by § 5018(b).[3] Accordingly, we agree with the district court that Knapp's issuance of the execution to the Sheriff for levy was valid.[4]

Turning to the question of whether the Sheriff is entitled to poundage and, if so, from whom, the district court concluded that since the Sheriff merely served the execution upon the Chemical Bank and never collected anything, he had not made a valid levy and thus was not entitled to poundage. We disagree. The execution issued to the Sheriff directed him to levy upon the

> "Custody account, or equivalent, of Security Bank, 9th and G Streets, NW, Washington, D. C., to the extent of any holding therein of treasury bills or notes, or proceeds or reinvestments thereof, for the use or benefit of Walter P. McFarland, alone or together with others. Such property includes a U. S. Treasury Bill or Bills purchased on or about May 12, 1971 at a cost of $490,232.22 and in the face amount of approximately $500,-000."

The Sheriff served the execution on the Chemical Bank on July 27 and was informed that the Bank had "no knowl-edge of the alleged interest of the judgment debtor in any such bills" and that it was "at this time unable to identify any property answering to your specification." In the face of this statement the Sheriff could hardly have seized anything. Up to this point he appears to have exercised reasonable diligence to discover property subject to levy and to execute process. See, e. g., Bust v. Fortner, 204 App.Div. 209, 197 N.Y.S. 649 (4th Dept.1923). On August 6, the Chemical Bank informed Tanner & Friedman and the Sheriff that although McFarland "may have some ultimate interest in the property" Security claimed "a security interest in any rights which McFarland may have to the property" and that Chemical would not therefore consent to turning over the treasury bills "to any party in the absence of the order or judgment of a court of competent jurisdiction, or the written instructions of the Security National Bank." The fact that Security, at the time of service of the execution upon Chemical, did indeed have a security interest in the property held by Chemical was later confirmed by McFarland's counsel by affidavit dated September 14, 1971, pointing to "a prior lien of Security National Bank" and Judge Levet so found.

Upon these undisputed facts, we do not believe that the Sheriff was required to take further steps before being entitled to poundage. We agree with Judge Levet that where the judgment debtor's property is capable of delivery, the sheriff is ordinarily obligated to levy by taking the property into his custody. CPLR § 5232(b); Anthony v. Wood, 96 N.Y. 181, 187 (1884); Rodgers v. Bonner, 45 N.Y. 379, 382

---

3. See Kulzer, The Uniform Enforcement of Foreign Judgments Act, State of N. Y., Judicial Conf., 13th Ann.Rep. 289 (1968), stating:

> "No provisions of the CPLR create a procedure inconsistent with that set up by this Act. The several alternative methods by which enforcement of foreign judgments may be had should not be affected by this Act."

4. McFarland asserts that Knapp's use of the Sheriff to enforce the judgment instead of the federal marshal amounted to an abuse of process. Since we hold that the execution was validly issued to the Sheriff, as a matter of law in the circumstances here there was no abuse of process. See Hauser v. Bartow, 273 N.Y. 370, 374, 7 N.E.2d 268 (1937); Safie v. Safie, 19 A.D.2d 900, 901, 244 N.Y.S.2d 727, 730 (2d Dept. 1963).

(1871); Socony Mobil Oil Co. v. Wayne County Produce. Co., 24 Misc.2d 519, 524, 196 N.Y.S.2d 729, 734–735 (Sup.Ct. Queens County 1959). However, circumstances may exist where the sheriff's "lack of physical possession does not deprive him of his right to poundage." McCloskey v. McGrath, 341 U.S. 475, 477, 71 S.Ct. 848, 850, 95 L.Ed. 1115 (1951) (property held by bank for Alien Property Custodian). See, e. g., National State Bank of Newark v. Garan, 36 Misc.2d 659, 665–666, 233 N.Y.S. 2d 866, 872–873 (Sup.Ct.N.Y. County 1962) (Treasury bills subpoenaed by U. S. Attorney); Gilman v. Sandow, 29 Misc.2d 1078, 1079, 220 N.Y.S.2d 644, 644–645 (Sup.Ct.N.Y. County 1961) (stock certificates held by attorneys pursuant to retaining lien); Hornblower & Weeks v. Sherwood, 124 N.Y.S.2d 322, 327 (Sup.Ct.N.Y. County), affd. mem., 282 App.Div. 931, 125 N.Y.S.2d 647 (1st Dept. 1953), affd., 307 N.Y. 204, 120 N.E.2d 790 (1954) (stock certificates held by brokerage concern to secure customers' indebtedness to it). For example, where the property levied upon is in the possession of a third party who has a security interest in it, such as that of a pledgee or lessee, the sheriff may not ride roughshod over the security interest of the person in possession. Indeed § 5232(b) directs that "The sheriff shall levy upon any interest of the judgment debtor in personal property capable of delivery by taking the property into his custody *without interfering with the lawful possession of pledgees or lessees*" (emphasis supplied).

Here the Security National Bank had lawful possession of the Treasury bills (through its custodian, the Chemical Bank) and had a security interest in those bills, which appears to have been comparable to that of a pledgee, i. e., a creditor in possession which had a "prior lien," according to the affidavit of McFarland's counsel. For the Sheriff to have insisted upon taking custody of the bills, absent evidence that Security's interest was a sham, would have interfered with its "lawful possession." Under the circumstances we believe that the Sheriff's service of a copy of the execution upon the Chemical Bank was sufficient to constitute a valid levy entitling him to poundage. The effect of the service of a copy of the execution, coupled with issuance of the restraining notices, was to bar the bank as garnishee from making any transfer of the Treasury bills. See, e. g., CPLR §§ 5222(b), 6214(b). To satisfy her judgment against McFarland's interest in the bills, whatever it might be, Knapp would be required as the judgment creditor to follow up the levy by commencement of a special proceeding as provided by CPLR § 5225 (b) [5] for determination of the interests of the parties in the bills and for transfer to her of so much of the judgment debtor's interest in the property

---

5. CPLR § 5225(b):

"(b) *Property not in the possession of judgment debtor.* Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5238."

as is sufficient to satisfy the judgment. Until McFarland posted a supersedeas bond this procedure was dictated in the present case, if Knapp wished to apply the bills in satisfaction of her judgment, by the further fact that the amount of McFarland's apparently undivided interest in the bills had not been defined.[6] The fact that Knapp may later have consented to the delivery of $200,000 of the Treasury bills to Johnson would not change the situation confronting the Sheriff at the time of his levy, which governs.

McFarland argues that the Sheriff's claim to poundage is defeated by § 8–317 of the Uniform Commercial Code ("UCC"), which provides that no levy upon an outstanding security shall be valid until it is actually seized by the officer. However, that statute was not enacted for the purpose of determining what levy would suffice to entitle a sheriff to poundage or to enforce a money judgment against a judgment debtor. Its purpose is to define the rights of third parties claiming an interest in attached personal property. More specifically its effect is to protect bona fide purchasers for value of property subject to a judgment creditor's lien by invalidating a levy as to such parties unless the sheriff has taken actual possession. This is confirmed by the Practice Commentary to the New York edition of § 8–317 of the UCC (McKinney 1964) (per Carlos L. Israels) which states:

"[O]ne who even after service of a warrant of attachment or similar process upon his transferor purchases the security for value in good faith and without notice of adverse claims (including the process), may become a bona fide purchaser for value under U.C.C. § 8–302, and may not be deprived of the security. However, relevant sections of [the] CPLR make the service of such process operate as an injunction against transfer or other disposition of the security by the garnishee (CPLR 5222, 6124 (a, b)) and provide a special proceeding against him to compel delivery or transfer of the security to the levying officer (CPLR 5225(b), 5227 and 6214 (d))."

As Judge Biggs stated in Neifeld v. Steinberg, 438 F.2d 423, 432 (3d Cir. 1971), the statute was enacted "to foreclose all possibility of the security finding its way into a transferee's hands after an attempted attachment has been made." Under similar circumstances UCC § 8–317 has been held not to bar the effectiveness of a levy on a stock certificate in the hands of a bank garnishee acting as custodian. Proteus Food and Industries, Inc. v. Nippon Reizo Kabushiki Kaisha, 4 UCC Rep. Serv. 961 (Sup.Ct. New York County 1968). We are satisfied that where, as here, a sheriff has used reasonable diligence to levy upon securities but is prevented from taking possession by a statutory prohibition against interference with the security interests of third parties in the property, he is entitled to poundage, even though UCC § 8–317 renders the lien invalid against a bona fide purchaser. Since McFarland is the judgment debtor in the present case and had notice of the levy, he has no standing to invoke § 8–317 against Knapp or the Sheriff.

This leaves the final question of who must pay the Sheriff his due. The execution here was released except to the extent of $11,000 (preserving the Sheriff's rights) upon agreement of the parties after McFarland posted the *supersedeas* bond and subsequently the remainder was vacated at his instance. CPLR § 8012(b) (2) provides that poundage is due to a sheriff after levy by virtue of an execution where a settlement between the parties is reached or where the execution is vacated or set aside. We have now held, in effect, that

---

6. Indeed, where a supersedeas bond is not posted, in some circumstances a failure by the judgment creditor to bring such a special proceeding within the period of validity of an execution may defeat the sheriff's right to poundage entirely. Personeni v. Aquino, 6 N.Y.2d 35, 37–38, 187 N.Y.S.2d 764, 765–767, 159 N.E.2d 559 (1959).

the execution should not have been vacated, but at most discharged upon proper application by McFarland as a result of his posting of the bond. In these circumstances it has been held that under § 8012(b) (2) he who posts the bond must pay the poundage. In Re Standardbred Owners Assn., Inc. and Yonkers Raceway, Inc., 44 Misc.2d 37, 38, 252 N.Y.S.2d 969, 970–971 (Sup.Ct. Nassau County 1964). Cf. CPLR § 8012(b) (3) which provides that "Where [a levy by virtue of] an order of attachment is . . . discharged by order of the court, the sheriff is entitled to . . . poundage, to be paid by the party at whose instance the order of attachment is discharged . . . ." See Distillers Factors Corp. v. Country Distillers, 81 N.Y.S.2d 857, 858–859 (Sup.Ct. New York County 1948). Accordingly, the ruling of the district court that the Sheriff is not entitled to poundage is reversed and the case is remanded with direction that an appropriate order be entered requiring McFarland to pay the poundage due to the Sheriff.[7]

7. McFarland argues that recovery of poundage against him is barred by this court's partial reversal and remand of the underlying judgment in Knapp v. McFarland, 457 F.2d 881 (2d Cir. 1972). We are unpersuaded. Knapp would not have been forced to have the Sheriff levy on the judgment appealed from there if McFarland had simply posted a *supersedeas* bond within the 10 days' grace period following entry of judgment in the district court provided by F.R.Civ.P. 62(a). He chose not to do so and must accept the consequences of his actions.