**In re STERLING DIE CASTING CO., INC., Debtor.**

**STERLING DIE CASTING CO., INC., Plaintiff,**

v.

**LOCAL 365 UAW WELFARE AND PENSION FUND, Defendant.**

**Bankruptcy No. 190–10590–260.
Adv. No. 190–1046–260.**

United States Bankruptcy Court,
E.D. New York.

April 26, 1991.

Sachs & Kamhi, P.C., Carle Place, N.Y., for debtor.

Sipser, Weinstock, Harper & Dorn, New York City, for Local 365 UAW Welfare and Pension Fund.

## DECISION DEEMING LIENS TO HAVE BEEN PERFECTED WITHIN 90 DAYS FROM THE FILING OF THE PETITION FOR RELIEF

### CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before this Court by way of an adversary proceeding brought by Sterling Die Casting Co., Inc. (hereinafter "Sterling" or the "Debtor" or "the plaintiff") against Local 365 UAW Welfare Pension Fund (hereinafter "the Defendant") to avoid a judicial lien obtained by it on the Debtor's real property and to recover about $15,000 obtained from the Debtor's bank account pursuant to a levy, all arising out of a judgment which the defendant had obtained in the federal court against the Debtor prior to the institution of these bankruptcy proceedings.

The first issue that arose out of these adversary proceedings was occasioned by the inclusion in the defendant's answer of various affirmative defenses and which, upon motion of the Debtor were stricken pursuant to decision of this Court dated September 11, 1990 from which no appeal has been taken. (118 B.R. 205 and 20 B.C.D. 1541).

At a pre-trial conference held before me, the defendant requested and I authorized it to submit a memorandum of law in support of its contention that under New York and federal law the federal court judgment obtained by the defendant created a lien which was effective prior to the 90 day statutory period and that there was no merit to the adversary proceeding. I then received from the Debtor its memorandum of law in which it argued that the lien was created within the 90 day period and was thus preferential. The reply memorandum submitted by the defendant reiterated its argument in support of dismissal. Although no formal motion was made by way of a motion for summary judgment or a motion to dismiss, this Court deems it necessary in the interest of justice to expedite the determination of the issues and that it pass upon the argument asserted pro and con by the plaintiff and the defendant as set forth above.

## FACTS

The facts of this case are not in dispute. Pursuant to a collective bargaining agreement, the defendant provided welfare and pension benefits to the employees of the Debtor. As the Debtor was in substantial default in its payment obligations for such benefits, the defendant obtained a judgment against it on November 9, 1989 in the sum of $454,014.13, in the United States District Court for the Eastern District of New York. On November 21, 1989, it docketed the judgment in the office of the Clerk of Kings County in which County the debtor's property is located. On December 22, 1989 the defendant sought to enforce its judgment by delivering a property execution to the Sheriff of Kings County. On January 5, 1990 the Sheriff levied upon the bank accounts of the Debtor pursuant to which the bank turned over to the defendant the sum of approximately $15,000 which was at that time on deposit in the Debtor's bank accounts. On February 16, 1990, Sterling filed its petition for relief under Chapter 11 of the Bankruptcy Code.

## DISCUSSION

Section 547(b) of the Bankruptcy Code states in pertinent part:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Sterling asserts that the lien against its real property did not attach until the day the judgment was docketed in the Kings County Clerk's Office 87 days prior to the commencement of this case. Furthermore, Sterling argues that inasmuch as the docketing date falls within the 90 day preference period, the lien is voidable under Sec. 547(b) as a preferential transfer. On the other hand, the defendant contends that the lien attached as of the date of judgment in the federal court, as opposed to the date of docketing in the County Clerks Office, and since that date fell outside the preference period, it cannot be avoided by the debtor in possession.

28 U.S.C. § 1962 provides for the creation of liens arising from federal court judgments against properties in the various states.

Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. *Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorized the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to the rules and requirements relating to judgments of the courts of the State.* 28 U.S.C. § 1962 (1982) (emphasis added).

Congress specified in that statute that state procedures for the docketing of liens must be followed where a state has such guidelines. "28 U.S.C. 1962 ... conforms with the congressional policy that the execution of federal judgments shall be done according to state law." *U.S. v. Hodes*, 355 F.2d 746, 749 (2d Cir.), *cert. granted*, 384 U.S. 968, 86 S.Ct. 1858, 16 L.Ed.2d 680 (1966), *cert. dismissed*, 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967).

In line with the mandate of Section 1962, this Court looks to the "guidelines" regarding the docketing of liens in the State of New York. New York Civil Practice Law and Rules ("CPLR") § 5018(b) is the provision in New York State law which provides for the docketing of federal judgments before a lien attaches to real property. This provision states:

A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county.

N.Y.Civ.Prac.L. & R. § 5018(b) (McKinney 1986). Read in conjunction with 28 U.S.C. § 1962, CPLR § 5018(b) grants effective lien status to a federal judgment "upon being docketed with a clerk of a county of the state."

The defendant's argument echoes CPLR § 5018(b) to the extent that a federal court judgment is given the same effect as a judgment entered in the supreme court within the county but claims that if we adopt the Debtor's argument that such a judgment does not create a lien on real property until it is docketed in the clerk's office of the county in which the property is situated, it is not given the same effect as a state court judgment since the state court judgment attaches as a lien "immediately after filing."

The defendant also contends that to adopt the Debtor's argument would be to misconstrue CPLR § 5018(b) and treat the judgment of a federal court as if it were no better than a judgment of a state court outside the county in which it was rendered. It further argues that such a decision would discriminate against the federal court judgment in violation of the Supremacy Clause, Article VI of the U.S. Constitution.

To support its position, defendant relies on the 1921 California decision of *Lineker v. Dillon*, 275 F. 460 (N.D.Cal.1921). In *Lineker*, the District Court struck down a state law which treated federal court judgments less favorably than state court judgments, stating, as a consequence, that a lien arose at the rendition of the federal court judgment. *Lineker* noted that California state court judgments operated as a lien on the real estate of the judgment debtor in the county where rendered upon docketing. For a lien to arise against property located in a different county than where the judgment was entered, a transcript of the judgment had to be filed in the county where the property was located. However, the California statute required that a transcript, and possibly a copy, of the federal judgment be filed with the clerk of the county in which the property was located *and* with the county recorder. Only after the judgment was duly recorded and indexed did the lien attach. The district court was distressed, however, at the extraordinary measures required of a federal judgment creditor before its lien attached. Emphasizing this disparity, the District Court stated, "[i]t will be readily seen that, not only is the judgment creditor under a federal judgment put to great circumlocution and necessarily greater expense than one holding a judgment of a state court, but that in the frequently important matter of time in getting his judgment to a point where it would operate as a lien the former would be hopelessly outdistanced by the latter."

This Court finds that requiring a federal court judgment be docketed with the county clerk where the property is located does not discriminate against federal court judgments and is indeed the correct interpretation of CPLR § 5018. Furthermore the New York Civil Practice Laws and Rules governing the attachment of liens do not present the federal judgment creditor with a burden any more onerous than that of the state judgment creditor. Therefore the problems noted by the Court in *Lineker* are not present in this case.

The defendant's arguments fail to recognize the import of the requirements of the CPLR which deal with the perfection and validity of liens in the State of New York. Upon judgment of the state court, the clerk must enter the judgment. N.Y.Civ.Prac.L. & R. § 5016(b) (McKinney 1986). Such entry is completed when the clerk signs the judgment and files it. Sec. 5016(a). A judgment roll, prepared by the prevailing party's attorney or the clerk, is filed when the clerk enters the judgment. Sec. 5017(a). After filing the judgment roll, the clerk dockets the judgment. Sec. 5018(a). The judgment then becomes a lien on the judgment debtor's real property. Sec. 5203(a).

When a judgment is rendered outside the county where the property is located, a transcript of the judgment must be filed in the county where the property is located, and the clerk there will then docket the judgment. Sec. 5018(a). At that time it too becomes a lien on the judgment debtor's real property. Sec. 5203(a). *See* commentary by David D. Siegal at C5203:2, page 102 (McKinney 1986). In the same manner, a transcript of a judgment of a court of the United States, upon filing with the clerk of the county in which the real property is located, will be docketed and given the same effect as a judgment entered in the supreme court within the county where it is docketed and thus become a lien on the judgement debtor's real property. Sec. 5018(b). *U.S. v. Hodes*, 355 F.2d at 748; *Knapp v. McFarland*, 462 F.2d 935, 938 (2d Cir.1972).

It is quite evident that in the State of New York the attachment of a lien necessitates neither indexing nor recording. The lien attaches upon docketing as do all state judgment liens. *See Nat'l Installment*

*Corp. v. Sacks,* 56 Misc.2d 346, 288 N.Y. S.2d 667, 669 (Sup.Ct., Suffolk Cty., 1968) ("It is from the moment of the docketing of a judgment in the county which is the situs of the real property that legal rights in the real estate of the debtor attach"); *Suffolk County Federal Savings & Loan Assoc.· v. Geiger,* 57 Misc.2d 184, 291 N.Y.S.2d 982, 984–85 (Sup.Ct., Suffolk Cty., 1968) (without the docketing of the judgment, no lien arises); Sec. 5203.

■ An analysis of the foregoing authorities and the provisions of the pertinent sections of the CPLR referred to above leads to the conclusion that under New York law a federal judgment must be docketed in the office of the clerk of a county before it obtains the status of a judgment lien on the judgment debtor's real property in that county.

Since the New York Civil Practice Law and Rules does not place litigants in state court in a better position than those in federal court, the statute in no way materially affects or subverts the judicial power of the federal government. *Cf. Lineker v. Dillon,* 275 F. 460, 472 (N.D.Cal.1921). Adopting the position of the defendant that a federal court judgment operates as a lien upon entry of the judgment would lead to unfairness. An undocketed judgment may place innocent parties at risk. The courts have noted the "hardship through the loss of their lands by citizens unaware of the fact of the existence of liens from such [federal] judgments, not of record in the county where the land was situated." *See U.S. v. Hodes,* 355 F.2d at 751 (Hays, J. dissenting) (quoting *Lineker v. Dillon,* 275 F. 460, 473 (N.D.Cal.1921). The docketing of a judgment necessarily announces that a lien exists on the debtor's property to all interested or potentially interested parties.

Because the procedure to attach real property pursuant to a federal court judgment as set forth in CPLR Sec. 5018 authorizes a federal court judgment to be docketed in the same way as the rules and requirements relating to New York State court judgments, CPLR § 5018(b) fulfills the requirements of 28 U.S.C. § 1961. Apparently the defendant was fully aware of the need to seek to perfect its lien on the real property when it docketed its judgment in the Kings County Clerks Office on November 21, 1989 within the 90 day statutory period, instead of merely relying on the docketing of its judgment in the federal court on November 9, 1989.

■ With respect to the attachment of the debtor's bank accounts and transfer of the funds to the defendant, CPLR § 5202(a) provides that a lien against personal property of the judgment debtor arises when the judgment creditor delivers an execution to the Sheriff. The facts clearly show that the judgment which the defendant recovered gave rise to a lien on the bank accounts when it delivered the execution to the Sheriff on December 22, 1989. Thus, the lien on the defendant's bank accounts and the transfer arising thereunder occurred within 90 days of the filing of the petition in bankruptcy.

## CONCLUSION

1. Jurisdiction is conferred on this Court pursuant to Title 28 U.S.C. Section 1334, subsections (a) and (d), and 28 U.S.C. Section 157(a) and (b)(1) in that this is an action arising in or related to a case under Title 11 U.S.C. This action is a "core proceeding" pursuant to 28 U.S.C. 157(b)(2)(F) seeking to avoid a preferential transfer.

2. The defendant's judgment against the Debtor effectively attached as a lien against the Debtor's real property within 90 days before the date of the petition.

3. The withdrawal of the sum of approximately $15,000 from the Debtor's bank accounts constituted a transfer of property of the Debtor made within 90 days before the date of the filing of the petition in bankruptcy herein.

4. The parties are directed to arrange with the Courtroom Deputy of this Court a date for the trial of the remaining issues to determine whether the defendant received preferences in violation of Section 547(b) of the Bankruptcy Code, namely that the Debtor was insolvent at the time of the transfers and that the transfers enabled the defendant to receive more than it would

receive if the case were a case under Chapter 7 and the transfer had not been made.

SETTLE ORDER consistent with this opinion.